IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

NATHANIEL REVIS, )
 )
    Plaintiff, )
 )
v. ) No. 3:04-cv-532
 )
APRIL C. MELDRUM, )
KATHERINE A. YOUNG, )
DALE J. MONTPELIER, )
TRACI A. WALDO, )
LASCHINSKI T. EMERSON, )
ANDERSON COUNTY DEPUTY CLERK )
JOYCE GRAVES in her individual and )
official capacity, )
ROANE COUNTY DEPUTY SHERIFF )
LARRY EATON in his individual and )
official capacity, )
ROANE COUNTY, TENNESSEE, and )
ANDERSON COUNTY, TENNESSEE, )
 )
    Defendants. )

## **MEMORANDUM OPINION**

This civil action is before the court on the motions of Katherine A. Young, Dale J. Montpelier, Traci A. Waldo, April C. Meldrum, and Laschinski T. Emerson[1] to dismiss or for summary judgment [docs. 50, 78, and 114]. The

---

[1] Defendant Emerson's motion is for summary judgment only, but she presents the same reasons why she should be dismissed as the other defendants.

plaintiff has responded to the motions [docs. 67, 100 and 123], and reply briefs have been filed [docs. 84 and 125 ]. The plaintiff has filed a motion requesting oral argument on the numerous motions to dismiss or for summary judgment that are pending in this case [doc. 101]. The court finds that oral argument on these defendants' motions will not be necessary, and the motions are ripe for the court's consideration. For the reasons discussed below, these defendants' motions to dismiss for failure to state a claim will be granted.

## I. Procedural and Factual Background

On July 22, 2003, an Anderson County jury returned a verdict in favor of Laschinski T. Emerson against Nathaniel Revis and his company Oak Ridge Research, Inc. a/k/a Oak Ridge Realty Holding, Inc. for assault, battery and retaliatory discharge. The jury awarded Ms. Emerson $18,000.00 from Nathaniel Revis and $157,800.00 from Oak Ridge Research, Inc. a/k/a Oak Ridge Realty Holding, Inc. The jury also awarded Ms. Emerson $500,000.00 in punitive damages, owed by both Revis and his company. The judgment was entered on November 13, 2003.

On August 13, 2004, an amended judgment was entered with a remittitur of the punitive damage award to $150,000. The attorneys for Ms. Emerson were awarded $282,964.50 in attorney's fees and $12,000.00 in discretionary costs. The amended judgment specifically provided that if an

2

appropriate bond was not filed within thirty days of the entry of the judgment, execution might issue on the judgment.

Mr. Revis did not post a bond within the thirty days, and defendant Meldrum filed applications for execution against several banks and also for Mr. Revis's personal property and his home. After approximately $28,000.00 was seized from a bank account belonging to Mr. Revis, and his home and its contents had been taken into custody by the Roane County Sheriff, a hearing was held on Mr. Revis's motion to stay execution on the judgment. He finally posted a bond that covered his liability on the judgment, and his personal property was returned to him.

Believing that the executions on his property were improper, Mr. Revis filed this lawsuit against Laschinski Emerson, the plaintiff in the state law action, and her attorneys April C. Meldrum, Katherine A. Young, and Dale J. Montpelier, and Tracy A. Waldo, a paralegal. Mr. Revis has also sued the Anderson County Deputy Clerk Joyce Graves in her official and individual capacities, Anderson County, Tennessee, Roane County Deputy Sheriff Larry Eaton in his official and individual capacities, and Roane County, Tennessee. Mr. Revis states nine causes of action, the first being a claim for damages against all the defendants for violations of his civil rights under 42 U.S.C. §§ 1983 and 1985. The remaining claims are state law claims for conspiracy, conversion, trespass,

abuse of process, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, and negligence.[2]

## II.  Legal Discussion

On a motion to dismiss alleging a failure to state a claim (Fed. R. Civ. P. 12(b)(6)), the court

> must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. . . . When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. . . . Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.

*Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996) (citations omitted).

The complaint alleges that this court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1343 based on a cause of action brought under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, and that the court has supplemental jurisdiction over the state law claims.  Defendants Young, Montpelier, Waldo, Meldrum, and Emerson all argue that the plaintiff has failed to state a claim against them under § 1983 because they are not and cannot be considered state

---

[2] The plaintiff has filed a motion to amend his complaint and change his malicious prosecution claim to "wrongful execution," and omit his negligence claim so as to eliminate any comparative fault defense the defendants might have [doc. 97].

4

actors, and that the plaintiff has failed to state a claim under § 1985 because there are no allegations of race or class-based discrimination.

## A. Plaintiff's § 1983 Claims

In his complaint, the plaintiff alleges that all the defendants are liable to him because their use of false affidavits and false levies was an "egregious, malicious and outrageous violation" of his right to be free from unreasonable searches and seizures and of his procedural and substantive due process rights. The plaintiff further alleges that defendants Graves and Eaton were state actors and their actions were taken under color of law "with deliberate indifference to plaintiff's clearly established constitutional rights." Paragraph 61 of the complaint states:

> Defendants Meldrum, Young, Montpelier, Waldo and Emerson are state actors acting under the color of state law for the purposes of 42 U.S.C. § 1983. Defendants Meldrum, Young, Montpelier, Waldo and Emerson acted in concert with Eaton and Graves by submitting the false applications for execution, delivering the false levies to Eaton, supervising the unwarranted seizure and removal of Revis's personal property, arranging for an offsite storage facility and transportation of the goods to that site, indemnifying Eaton against liability for wrongful execution, and demanding and providing the means for locking Revis out of his own home. Said defendants acted in concert and according to a conspiracy with Eaton and Graves to deprive Revis of his constitutional rights, and they are jointly and severally liable under 42 U.S.C. §§ 1983 and 1985.

5

It is on the basis of these allegations that the court must determine whether the plaintiff has stated a claim against the individual private defendants or if, as they claim, they are not state actors under the circumstances of this case. *See Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) (finding of state action depends on case's peculiar facts and circumstances).

Most rights secured by the Constitution, such as due process and freedom from unreasonable searches and seizures, are protected only against infringement by state actors through the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The Fourteenth Amendment offers no shield against private conduct, no matter how wrongful or discriminatory. *Id.*; *see also Lansing*, 202 F.3d at 828 (Fourteenth Amendment protections are triggered only in the presence of state action and a private entity acting on its own cannot deprive citizens of constitutional rights).

Nevertheless, when a private actor may be considered a state actor for § 1983 purposes when the allegedly wrongful conduct is fairly attributable to the state. *Tahfs v. Proctor*, 316 F.3d 584, 590-591 (6th Cir. 2003) (citing *Lugar*, at 937, 102 S.Ct. at 2753). First, to determine whether actions are fairly attributable to the state, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Lugar*, at 937, 102 S.Ct. at 2753.

Second, the party charged with the deprivation must fairly be said to be a state actor because he is a "state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Id.*, at 937, 102 S.Ct. at 2754. Obviously these two factors merge when the constitutional violation is caused by a public official, but they diverge when the alleged violation is caused by a private party. *Id.* Both factors must be met to state a claim against a private actor under § 1983. *Id.* at 941, 102 S.Ct. at 2756.

For the following reasons, the court finds that the plaintiff's claims against these private parties fail on both factors. First, private misuse of a state statute does not describe conduct that can be fairly attributed to the state; it is conduct that cannot be ascribed to any governmental decision. *Id.* at 940-41, 102 S.Ct. at 2755-56. Rather, the state-action requirement is met only when a plaintiff's allegations challenge the procedures themselves as constitutionally defective under the Fourteenth Amendment. *Id.* Thus, if the claims against these defendants are only that they acted contrary to the relevant policy of the Tennessee execution rules and statutes, then there is no state action under *Lugar*'s first test.

The court has carefully reviewed the plaintiff's complaint and cannot find any allegation that the state procedures themselves are constitutionally defective. In addition to paragraph 61 quoted above, the plaintiff alleges that

7

defendant Meldrum "maliciously swore out" false applications for execution which were insufficient to obtain levies; that defendant Meldrum caused the levies to be delivered to the Roane County Sheriff for execution; that Waldo, over the plaintiff's protests, allowed the seizure of property valued in excess of the judgment; and Deputy Eaton, along with Waldo, directed that the locks on his house be changed, thus evicting him from his home.

The court finds that the plaintiff's claims in this case relate only to the defendants' misuse of lawful state procedures; there are no allegations that the state procedures themselves were procedurally defective. Absent a claim that challenges the state statutes as procedurally defective under the Fourteenth Amendment, the conduct here cannot be fairly attributable to the state.

In *Gene Thompson Lumber Co., Inc. v. Davis Palmer Lumber Co., Inc.*, 984 F.2d 401 (11th Cir. 1993), a case cited by the defendants in support of their motions to dismiss, the jury found that the defendant had unlawfully obtained prejudgment relief under the Georgia statutes. The Eleventh Circuit, however, found that the private defendant's behavior could not be properly attributed to the state. The court noted that plaintiff's "rather acerbic allegations of [the defendant's] wrongful manipulation of Georgia's otherwise proper prejudgment attachment and garnishment statutes . . . scuttle its section 1983 claim." *Id.* at 404.

The defendants also rely on an unreported Sixth Circuit opinion, *Hill v. Langer*, No. 02-1852, 2004 WL 162554 (6th Cir. Jan. 26, 2004). In *Hill*, the Sixth Circuit affirmed the district court's finding that the plaintiffs failed to establish state action. Plaintiff Hill leased an apartment in a building owned by the Langers. When Hill became delinquent in her rent payments, the Langers sought a writ of restitution. The writ was subject to Hill paying the rent within a specified time. When the full amount owed was not paid, Hill was evicted. She filed a § 1983 action alleging violations of her due process rights. *Id.* at *1. After setting out the law discussed above, the Sixth Circuit found that Hill's complaints of misuse of the Michigan statutes did not "describe conduct attributable to the state." *Id.* at * 3 Further, the court found that the mere filing of an eviction proceeding was not, in and of itself, a state action. *Id.* at * 4.

In his response to defendant Meldrum's motion, the plaintiff argues that the *Hill* case is inapposite because he is not basing his § 1983 claim on the wrongful invocation of the state statutes. Rather, his claim is based on the private defendants' participation with Deputy Eaton in an unlawful eviction and search. This fine distinction does not save the plaintiff's § 1983 claims. He still fails to claim any state action under the Fourteenth Amendment.

The plaintiff urges this court to apply the holding of *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692 (6th Cir. 1996). In *Vector Research*, a divided panel of the Sixth Circuit found that private attorneys who

9

sought and executed a search warrant under the Copyright Act were "federal agents" for purposes Vector's *Bivens* claims. *Id.* at 698. The holding in *Vector,* however, was based on the majority's assumption that an earlier case's use of the term "agent" instead of "employee" meant that a private individual acting in concert with federal marshals could be liable under *Bivens*. *Id.* (discussing *Wagner v. Metro. Nashville Airport Auth.*, 772 F.2d 227, 230 (6th Cir. 1985)). The court finds that *Vector* is limited to the particular facts before that panel and that its holding does not apply here because there are no allegations that the private defendants in this case were acting as government agents or performing government tasks.

The second *Lugar* factor to be considered is whether the private party's conduct can nevertheless make him a state actor for purposes of § 1983. In the Sixth Circuit there are three tests to consider when making that determination: the nexus test, the public function test, and the state compulsion test. *Lansing*, 202 F.3d at 828.

> The nexus test requires that a sufficiently close
> relationship exist between the state and the private actor
> (through regulation or by contract) so that private action
> may be attributable to the state. The public function test
> requires that the private actor exercise powers that are
> traditionally reserved to the state. And, the state
> compulsion test requires proof that the state significantly
> encouraged or coerced the private actor, either overtly
> or covertly, to take a particular action so that the choice
> is actually that of the state.

*Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (internal citations omitted). The plaintiff has not claimed that the defendants meet any of these categories, but based on the allegations in paragraph 61 of the complaint and construing them as liberally as possible, it appears that only the nexus test has any application to the facts of this case.

      In order to determine whether there is a "sufficiently close nexus" between the state and private party, the Sixth Circuit has identified some factors that are "decidedly insufficient": state regulation, public funding, private use of public property, minority presence of public officials on the board of a private entity, and utilization of public services. *Lansing*, 202 F.3d at 830-31. As to the last factor, utilization of public services, the Supreme Court has held that "private use of state-sanctioned private remedies or procedures does not rise, by itself, to the level of state action." *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 622, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660 (1991). State action under this circumstance will only be found when a private party makes extensive use of state procedures with "overt, significant assistance of state officials." *Id.* at 622, 111 S.Ct. at 2084. In this case, the plaintiff claims that after Deputy Eaton ordered the plaintiff to surrender his property pursuant to the levies of execution, he "mostly stood around and watched hour after hour as Waldo and others gradually removed all of Revis's personal effects from his home." Complaint, ¶ 44. Following the removal of all the plaintiff's belongings, the plaintiff says that

11

Deputy Eaton supervised the changing of the locks on the plaintiff's home. The plaintiff's allegations demonstrate that Deputy Eaton was there merely to make sure that the law was complied with and to keep the peace while defendants carried out their private remedies. The court finds that these allegations are not sufficient to meet the Supreme Court's standard of "overt, significant assistance."

Related to the nexus test is the circumstance where the plaintiff alleges that the private party acted corruptly and in concert with a state official. *See Tahfs*, 316 F.3d at 591. If the plaintiff has sufficiently alleged such a corrupt conspiracy, state action might be found. *Id., see also Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989) ("a private party may conspire with the state and be liable under § 1983"). The plaintiff must plead the conspiracy with some degree of specificity. *Tahfs*, at 591*; see also Hickey v. Hollister*, No. 93-3217, 1994 WL 69632 (6th Cir. Mar. 2, 1994).

In this case, the plaintiff alleges that the private defendants "acted in concert and according to a conspiracy" with the county defendants to deprive him of his constitutional rights. The plaintiff, however, does not specify the facts upon which his allegations of conspiracy are based. In fact, a liberal reading of the complaint shows that if a conspiracy existed at all it was among the private defendants, and the two state actors had nothing to do with the allegedly false affidavits and false levies which the plaintiff claims caused the violations of his rights. There are no allegations that the defendants conspired with defendant

12

Graves to the end that she performed her ministerial duties in violation of the plaintiff's rights. Nor are there any allegations that the defendants conspired with defendant Eaton to execute on the judgment in violation of the plaintiff's rights. The court has no opinion at this time whether the writs or the execution complied with Tennessee law, but the mere possibility that Tennessee law was not followed does not make a conspiracy out of the defendants' actions.

The court finds that the plaintiff's allegations of wrongdoing against the private defendants cannot be fairly attributed to the state and there is no state action in this case. Therefore, the § 1983 claims against Meldrum, Young, Montpelier, Waldo, and Emerson will be dismissed.

**B. Plaintiff's § 1985 Claims**

The plaintiff also alleges that he is entitled to relief under 42 U.S.C. § 1985, without a citation to the particular section of this statute that might apply. The court finds that § 1985(3) is the only portion of this statute that could conceivably apply to the defendants in this case. However, for the reasons discussed below, the court finds that the plaintiff has failed to state a claim under this federal statute.

Section 1985(3) does not require state action: it reaches private conspiracies. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992). "However, section 1985(3) also requires that there be some racial or other class-

based invidiously discriminatory animus behind the conspirators' action." *Id.* The plaintiff alleges a conspiracy among the defendants to improperly seize his property, but there are no allegations that the defendants conspired to violate his due process and Fourth Amendment rights because of his race or some other class-based consideration.

In his response to the defendants' motions on this issue, the plaintiff argues that his claim under § 1985 survives because all the defendants except Emerson are white and he and defendant Emerson are black. First, this allegation was not made in his complaint and, second, it fails because Emerson was the party who obtained the judgment in state court that gave rise to all the issues before this court. It would be difficult to claim that Ms. Emerson's white attorneys conspired with their black client to discriminate against the plaintiff.

The court finds that the plaintiff has failed to even minimally plead a cause of action under § 1985, and this claim brought against defendants Meldrum, Young, Montpelier, Waldo, and Emerson will be dismissed.

**C. Plaintiff's State Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise its supplemental jurisdiction over the state law claims stated in Counts II through IX, because the court has dismissed all the claims against these defendants over which it has original jurisdiction.

14

## III. Conclusion

For the reasons stated above, the plaintiff's § 1983 and § 1985 claims against defendants Meldrum, Young, Montpelier, Waldo, and Emerson are dismissed, and the court declines to exercise its supplemental jurisdiction over the state law claims. An order reflecting this opinion will be entered.

ENTER:

    *s/ Leon Jordan*
United States District Judge